TAYABAS LAND COMPANY, ASSIGNEE AND SUC- . CESSOR ·OF VELASQUEZ ET AL., *v.* MANILA RAILROAD COMPANY.

ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 331.   Argued April 25, 1919.—Decided May 19, 1919.

Under §§ 246, 273, 496 and 497 of the Code of Civil Procedure of the Philippine Islands, the Supreme Court of the Islands may review the evidence touching the amount of an award reported by commissioners and accepted by the Court of First Instance in a condemnation case, and may find a different amount upon a preponderance of the evidence and modify the judgment accordingly if a motion for new trial has been made and exceptions taken as provided in the last-mentioned section. P. 24.

This court will accept a construction placed by the Supreme Court of the Philippine Islands upon a local statute, if not clearly erro-

neous, and will assume that that court duly considered and weighed the testimony and commissioners' report on the facts. P. 27.
This court cannot examine questions of fact in a case coming from the Philippine court on writ of error. *Id.*
32 Phil. Rep. 286, affirmed.

THE case is stated in the opinion.

*Mr. David A. Baer,* with whom *Mr. A. S. Crossfield* and *Mr. S. W. O'Brien* were on the brief, for plaintiff in error.

*Mr. Edward S. Bailey* for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

A case of eminent domain exercised by the railroad company to condemn twelve small parcels of land in Lucena, Province of Tayabas, Philippine Islands, in accordance with the petition of the railroad company.

In accordance with the statutory provisions three commissioners were appointed to hear the parties and inspect the properties. They subsequently reported that the parties had been heard and that they, the commissioners, had inspected the properties and examined the same "inch by inch."

They made further detail of their proceedings, set forth certain causes for the increase in value of the properties in the four or five years preceding the hearing, even before the coming of the railroad to the town "so that the value of land near Cotta was quoted at P2.00 up per square meter, according to the importance and situation of the land," but that the railroad had "undoubtedly greatly influenced the rise in the prices of the same lands." They reported, however, that, taking into consideration all the circumstances, benefits to the railroad and others, they unanimously fixed the values of the pieces of prop-

erty belonging to the parties who were first impleaded in the cause. These values it is not necessary to give nor to designate the properties to which they were attached, for the reason that the ownership of the properties, part before and part after the rendition of the commissioners' report, had become vested in the Tayabas Land Company.

In accordance with the report judgment was rendered in favor of the land company for P81,412.75, with interest at the rate of 6% from the date of taking possession of the land.

Motions for new trials were denied and the case was taken to the Supreme Court of the Islands by the railroad company, and that court modified the judgment by reducing the award for one of the parcels, containing 16,094 square meters, to the sum of P6,500, and the damages for the remaining parcels were fixed at the same proportionate amount.

The land company says, however, that "the prime question involved in this entire case is in its last analysis one of value, that is, what is a fair value of the land taken by the railroad company for its railroad station at Lucena?" That, indeed, is the ultimate inquiry, but it depends, according to other contentions, upon the power of the Supreme Court over the report of the commissioners and to review and consider the evidence. In other words, the weight that was to be given to the report of the commissioners as a matter of fact and law under § 246 of the Code of Civil Procedure of the Islands and to the findings of the Court of First Instance under §§ 273 and 497 of the same code.

Section 273 describes the elements that must be considered in determining in a case where "the preponderance or superior weight of evidence on the issues involved lies," and § 497 provides for the extent of the power of the Supreme Court to review and dispose of the case on ap-

peal, and it is contended that the Supreme Court was bound, as the Court of First Instance was, to decide by the preponderance of the evidence determined in the same way. This may be conceded, and to what extent the Supreme Court satisfied the requirement of the section we shall presently consider after we have given attention to the more insistent contention based on § 246, which reads as follows:

"Upon the filing of such report in court, the court shall, upon hearing, accept the same and render judgment in accordance therewith; or for cause shown, it may recommit the report to the commissioners for further report of facts; or it may set aside the report and appoint new commissioners or it may accept the report in part and reject it in part, and may make such final order and judgment as shall secure to the plaintiff the property essential to the exercise of his rights under the law, and to the defendant just compensation for the land so taken; and the judgment shall require payment of the sum awarded as provided in the next section, before the plaintiff can enter upon the ground and appropriate it to the public use."

It will be observed that an alternative power is presented, either to accept the report and render judgment in accordance therewith or to make other dispositions of it or upon it; the latter, however, in a very general way. And the absence of detail encourages and gives some plausibility to controversy, but it is resolved, we think, against the contention of the land company by the analysis of the Supreme Court of the section. The court points out, quoting the section, that it may "accept the report in part and reject it in part;" and it observed that that situation alone might limit the court's power if it were not also empowered "to make such final order and judgment as shall secure to the plaintiff the property essential to the exercise of his rights under the law, and

to the defendant just compensation for the land so taken."
A comprehensive power, we may instantly say, and one
required to be exercised and adequate when exercised to
pass upon and finally adjudge the designated rights. And
it gives facility to the statute, substitutes for circumlocu-
tion and delay, directness and expedition, qualities that a
statute of eminent domain should possess.

The court further pointed out that the "'final order
and judgment' are reviewable by this court by means of
a bill of exceptions in the same way as any other 'action,'"
and decided besides that § 496 of the Code was applicable.
That section gives power in the exercise of appellate
jurisdiction to "affirm, reverse, or modify any final judg-
ment, order, or decree of the Court of First Instance."
And this discretion, the Supreme Court in the present
case decided, extends to cases of eminent domain and,
where § 497 of the Code providing for motions for new
trial had been complied with, it, the court, might "examine
the testimony and decide the case by a preponderance of
the evidence; or, in other words, retry the case on the mer-
its and render such order or judgment as justice and equity
may require." The final conclusion of the court was,
rejecting the contention of appellants, that it had power
"to change or modify the report of the commissioners by
increasing or decreasing the amount of the award" if the
facts of the case justified. And it was the conclusion of
the court that the facts so justified; and, after a review of
prior cases, it rejected the contention that its conclusion
was in conflict with them.

It will be observed, therefore, that the court considered
that it was under the same obligation to determine the
case by the preponderance of the evidence as was the
Court of First Instance, and discharging its obligation, that
is, in determining upon the weight of the evidence, its esti-
mate of the values of the properties taken by the railroad
was different from that of the Court of First Instance.

We are brought back, therefore, to the consideration of § 246 and the contention of plaintiff in error that under it the Supreme Court had transcended its powers in reducing the values found and reported by the commissioners and "erred in holding as a matter of law that appellants were not entitled to recover the amount fixed by the commissioners," they being the tribunal to hear the evidence and view the premises, and that under § 246, their report being filed, the court was required "upon hearing to accept the same and render judgment in accordance therewith," there being no cause shown, it is contended, for recommitting the report or exercising any of the other alternatives permitted by the section.

But, as we have seen, as to its power of action upon the report of the commissioners the court differed radically with the land company, and if we should, in deference to the land company's contention, admit there is ambiguity in § 246, we should be unable nevertheless to reverse the ruling of the Supreme Court of the Islands upon the local statutes, and we must assume the court gave consideration to all of the testimony and estimated the weight to be assigned to the report and to the declaration of the commissioners that they had examined "inch by inch" the properties involved. We say this only in passing. The case is here on writ of error and we cannot examine questions of fact. *Santos* v. *Roman Catholic Church*, 212 U. S. 463; *Ling Su Fan* v. *United States*, 218 U. S. 302, 308; *Harty* v. *Victoria*, 226 U. S. 12; *Gauzon* v. *Compañia General &c.*, 245 U. S. 86, 88.

Errors of law besides those stated above are asserted. For instance the company contends that the court used the evidence that had been introduced to prove title as evidence of value and, further, assigned too much strength to it. Both propositions are too intimately associated with and dependent upon the whole case to be estimated in separation. The court's consideration, therefore, or its

judgment upon them we cannot disturb. Indeed, the contention of the land company is but an instance of its broader contention of want of power in the Supreme Court to review the findings of the Court of First Instance or to disregard the report of the commissioners. Accepting the decision of the court upon those propositions, we necessarily affirm its judgment.

*Judgment affirmed.*

MR. JUSTICE BRANDEIS concurs in the result.